[No. C024317. Third Dist. Oct. 29, 1998.]

LARRY T. JOHNSON, Plaintiff and Appellant, v.
UNITED SERVICES AUTOMOBILE ASSOCIATION, Defendant and
Respondent.

628

**COUNSEL**

DeRonde & DeRonde, John A. DeRonde, Jr., and Glen A. DeRonde for Plaintiff and Appellant.

Schuering, Zimmerman & Scully, Leo H. Schuering and Douglas L. Smith for Defendant and Respondent.

John St. John, Mitchell Haller, Krukowski & Costello, Robert A. Hirsch, Williams & Montgomery, David E. Neumeister, James K. Horstman,

Lloyd E. Williams, Jr., Shaffer, Gold & Rubaum, Lawrence S. Rubaum and Barry I. Gold as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**DAVIS, Acting P. J.**—In a recent decision, the California Supreme Court in *Cedars-Sinai Medical Center* v. *Superior Court* (1998) 18 Cal.4th 1 [74 Cal.Rptr.2d 248, 954 P.2d 511] (*Cedars-Sinai*) disapproved *Smith* v. *Superior Court* (1984) 151 Cal.App.3d 491 [198 Cal.Rptr. 829], and concluded there is no tort cause of action for first party intentional spoliation of evidence when the spoliation is or reasonably should have been discovered before the conclusion of the underlying litigation. (*Cedars-Sinai, supra,* 18 Cal.4th at pp. 17-18, fn. 4.) Spoliation of evidence is the destruction or suppression of evidence. A first party spoliator is a party to the litigation in which the spoliated evidence is deemed relevant. The *Cedars-Sinai* court declined to decide "whether a tort cause of action for spoliation should be recognized in cases of 'third party' spoliation" (i.e., spoliation by one not a party to the litigation in which the evidence is deemed relevant). (18 Cal.4th at p. 18, fn. 4).

In this appeal, we adhere to prior precedent and confirm there is a limited cause of action for negligent spoliation of evidence by a third party spoliator. This cause of action is analogous to the cause of action for negligent interference with prospective economic advantage.

Specifically, we examine the duty element of the negligence cause of action for spoliation of evidence in the third party spoliator context. We conclude that where, as here, there has not been an agreement to preserve, or a specific request to preserve accompanied by an offer to pay the cost or otherwise bear the burden of preserving, or a voluntary undertaking to preserve which induces reasonable and detrimental reliance, and no duty has been imposed by contract, statute, regulation or some analogous special relationship, there is no duty basis for a cause of action for third party negligent spoliation of evidence. In the context of an alleged third party negligent spoliator, constructive notice of a need to preserve is not enough to create a duty to preserve. Because the trial court instructed the jury along the relevant duty lines of agreement, specific request and undertaking, we affirm the judgment.

### BACKGROUND

This matter arose from a car accident on September 15, 1991, in which the plaintiff, Larry T. Johnson (plaintiff), was ejected from his car and sustained

brain damage. At the time of the accident, Stephen Gilmore was the driver as a permissive user and plaintiff was a passenger in the front seat. Plaintiff owned the car; the car was insured by plaintiff's father with defendant United Services Automobile Association (USAA). Plaintiff was a dependent or household member insured under the USAA policy.[1]

The car was a total loss. A property damage settlement was reached. Plaintiff's father specifically declined to retain the salvage, stating "there [is] no need to keep the car because I have no use for it." Title to the vehicle was then transferred from plaintiff to USAA.

In an internal record, USAA adjusters noted on October 17, 1991, that "[t]he shoulder strap of the front passenger seat was torn from its housing, which explains why [plaintiff] was ejected from the insureds' vehicle." A police report received by USAA on October 7, 1991, and a statement from plaintiff's father around that time, apparently identified a malfunction in the seat belt. A USAA adjuster on November 1, 1991, noted the "[n]amed insured . . . has an attorney and he wants to sue the manufacturer for a seat belt malfunction and . . . the attorney or representative [wants to] look at the insured vehicle." Plaintiff's counsel had the car inspected in mid-November 1991, by an accident reconstruction expert who removed a portion of the seat belt to preserve it as evidence.

In late November 1991, USAA transferred title of the car to salvage. The car was purchased at a salvage auction in February 1992, and was then reworked and resold in August 1992.

In early 1992, USAA paid plaintiff the $300,000 bodily injury (liability) policy limit regarding plaintiff's claim against the driver, Stephen Gilmore, as a permissive user under the USAA policy. (USAA also paid plaintiff $10,000 for using his seat belt and $5,000 for medical payments.)

In May 1992 plaintiff sued Honda for product liability, claiming the seat belt was defective. Around June of 1992, plaintiff's counsel asked USAA where the car was, as it was needed for evidence in the product liability suit. Honda and plaintiff eventually settled the product liability action for $500,000.

In April 1993, plaintiff and his father sued USAA for, among other things, negligent or intentional spoliation of evidence. They claimed that had the car been preserved, plaintiff's product liability claim against Honda would have been worth more.

---

[1]We conclude plaintiff was an "insured" under the USAA policy, as noted by plaintiff (and opposed by USAA) in their respective requests for judicial notice.

Following a motion for summary judgment/summary adjudication of issues by USAA, the only action remaining in the spoliation lawsuit by the plaintiff and his father was plaintiff's claim for spoliation of evidence. That claim went to jury trial.

On that claim, the trial court instructed the jury with BAJI No. 7.96 (which, as we shall explain later, erroneously allows a third party spoliator to be held liable for negligent spoliation of evidence on mere constructive notice of a need to preserve evidence). But the trial court also added the following duty requirement in its instructions: "For plaintiff to prevail on his claim of negligent spoliation of evidence you must find . . . either that [USAA] agreed to preserve plaintiff's [car] or [that] plaintiff specifically requested [USAA] to preserve the car or that [USAA] undertook responsibility for [preserving] the car and plaintiff relied to his detriment on that undertaking." (Underlines in original.)

In a special verdict, the jury determined that USAA had not agreed to preserve the car, that plaintiff had not specifically requested USAA to preserve, and that USAA had not undertaken responsibility for preserving. Accordingly, judgment was entered in USAA's favor.

## DISCUSSION

■ On appeal, plaintiff contends the trial court erroneously instructed on the negligence cause of action for spoliation of evidence by limiting the duty basis to agreement, specific request, or undertaking with detrimental reliance. We disagree. Plaintiff also raises an issue of causation involving burden shifting. Because our resolution of the duty issue disposes of this case, it is unnecessary for us to consider the causation issue.

■ Before we address the question of duty, we must address the threshold question of whether *Cedars-Sinai* forecloses the recognition of a third party negligent spoliation cause of action entirely.

As noted, *Cedars-Sinai* concluded there is no tort cause of action for first party intentional spoliation of evidence when the spoliation is or reasonably should have been discovered before the end of the underlying litigation. Three concerns prompted this conclusion: (1) a tort remedy for first party intentional spoliation would run counter to the policy against creating derivative, litigation-engendering tort remedies for litigation-related misconduct; (2) there are sufficient existing nontort remedies for first party spoliation, particularly within the underlying litigation itself (for example, sanctions or evidentiary inferences against the first party spoliator); and (3)

the fact of harm in spoliation cases is uncertain, and the costs related thereto are significant, such as inaccuracy, confusion, and duplication in the judicial process, as well as the costs of preservation. (*Cedars Sinai, supra,* 18 Cal.4th at pp. 8-9, 15-17.)

Of these three concerns, the first two basically are not implicated in the third party spoliation context. The third concern is implicated in that context, however. A similar uncertainty of the fact of harm, though, has been addressed in the prospective economic advantage arena (see *J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799, 804-805, 808 [157 Cal.Rptr. 407, 598 P.2d 60] (*J'Aire*)), and the costs of preservation can be placed on the person seeking preservation. We do not read *Cedars-Sinai* as foreclosing a cause of action for third party negligent spoliation of evidence.[2]

Having concluded that *Cedars-Sinai* does not foreclose a cause of action for third party negligent spoliation, we review briefly the California precedents that have recognized this cause of action or discussed its duty element.

Although the California Supreme Court in *Williams* v. *State of California* (1983) 34 Cal.3d 18 [192 Cal.Rptr. 233, 664 P.2d 137] (*Williams*) did not recognize the existence of a spoliation tort remedy, *Williams* paved the way for recognition of a limited cause of action for negligent spoliation of evidence. (*Cedars-Sinai, supra,* 18 Cal.4th at pp. 5-6, fn. 1.) In *Williams*, highway patrol officers responded to an accident in which a piece of heated brake drum from a passing truck crashed into plaintiff's windshield causing serious injuries. Plaintiff sued the State of California in effect for failure to preserve evidence. She alleged the officers failed to investigate the brake drum, failed to identify witnesses and failed to identify or pursue the truck. (34 Cal.3d at pp. 21-22.) The state successfully moved for judgment on the pleadings. (*Id.* at p. 22.)

---

[2]Although plaintiff notes in his opening brief that the level of proof in this case was tantamount to intentional interference with prospective advantage, he acknowledges in his reply brief that he "has never suggested that USAA . . . acted intentionally and did not urge same at either summary judgment, or trial." Consequently, as noted above, the issue before us is the duty element of the negligence cause of action for spoliation of evidence. A negligence cause of action for spoliation of evidence is not a new tort; instead, it is another theory upon which a negligence cause of action may be stated. Thus, the elements of this cause of action, as with any negligence cause of action, are duty, breach, causation and damages. (See Bruzzano, *Spoliation of Evidence in California* (1994) 24 Sw.U. L.Rev. 123, 133.)

In his reply brief, plaintiff also notes the trial court improperly excluded a letter requesting preservation. But plaintiff does not raise this point in his opening brief. Nor does he supply a separate heading for this point, or any argument or authority for it. Consequently, we deem this point waived. (See *Varjabedian* v. *City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11 [142 Cal.Rptr. 429, 572 P.2d 43]; Cal. Rules of Court, rule 15(a); *Webster* v. *Board of Dental Examiners* (1941) 17 Cal.2d 534, 543 [110 P.2d 992].)

As stated by the *Williams* court, the issue was "whether the mere fact that a highway patrolman comes to the aid of an injured or stranded motorist creates an affirmative duty to secure information or preserve evidence for civil litigation between the motorist and third parties." (34 Cal.3d at p. 21.) The court said no. (*Id.* at p. 27.) But the court suggested that such a duty might be established by showing that the officer voluntarily assumed responsibility to protect the plaintiff's interests in civil litigation, or had some special relationship upon which the plaintiff reasonably and detrimentally relied. (*Id.* at pp. 27-28.)

*Velasco v. Commercial Bldg. Maintenance Co.* (1985) 169 Cal.App.3d 874 [215 Cal.Rptr. 504] (*Velasco*) was the first California case to recognize expressly a negligence cause of action for spoliation of evidence. (*Id.* at p. 877.)

In *Velasco*, the plaintiff had been injured by an exploding bottle. The plaintiff took the bottle fragments to his attorney, who left them in an unmarked bag on his desk. The janitorial service then threw away the bag while cleaning the attorney's office. (169 Cal.App.3d at p. 876.) The plaintiff sued the janitorial service for negligently disposing of the bottle fragments. (*Ibid.*)

The court in *Velasco* held "that a cause of action may be stated for negligent destruction of evidence needed for prospective civil litigation." (169 Cal.App.3d at p. 877.) *Velasco* drew an analogy to the negligence cause of action for interference with prospective economic advantage, as recognized in *J'Aire, supra,* 24 Cal.3d at pages 803-804. (169 Cal.App.3d at p. 877.)

As *Velasco* noted, "[t]he *J'Aire* court relied on an assessment of the following criteria in determining that [a negligence] cause of action [for interference with prospective economic advantage] had been stated: '(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm.' " (169 Cal.App.3d at pp. 877-878.)

In ultimately dismissing the negligent spoliation cause of action against the janitorial service on its facts, *Velasco* focused on the second of these factors—foreseeability. The court concluded, as a matter of law, that ". . . a reasonably thoughtful janitor is entitled to assume that, if an item that

seemed to be garbage were actually evidence, its container would be appropriately marked and, quite likely, not left lying about. . . . If loss of evidence . . . herein described should have been foreseeable, that loss should have been foreseen by the attorney, not by" the janitorial service. (169 Cal.App.3d at pp. 878-879.)

A duty to preserve evidence was next considered in *Reid* v. *State Farm Mut. Auto. Ins. Co.* (1985) 173 Cal.App.3d 557 [218 Cal.Rptr. 913] (*Reid*), this time in connection with an insurer's alleged breach of the implied covenant of good faith and fair dealing. *Reid* is similar to the present matter.

Plaintiff Reid, a permissive user of the insured's car, was injured in a single-car collision. The insurer, State Farm, settled the property damage claim of its insured as a total loss. The insured then transferred ownership of the wrecked car to State Farm. State Farm sold the car to an auto body company, which later cut the car up for parts. Eleven months after the accident, Reid sued the manufacturer, seller and repairer of the car for product liability. Nineteen months after the accident, Reid contacted State Farm about the car. Upon learning of the car's destruction, Reid sued State Farm for breach of the covenant of good faith and fair dealing (this covenant extended to Reid as a permissive user); Reid contended that State Farm had a duty to preserve the car for purposes of his product liability action. (173 Cal.App.3d at pp. 563, 567-569.)

The *Reid* court discussed many facts showing the lack of State Farm's notice and knowledge about Reid's need for the car. (173 Cal.App.3d at pp. 564-568, 578-579.) But the court held, as a matter of law, that State Farm had no duty to preserve the car absent a "specific request" from the insured or from Reid to do so. (*Id.* at pp. 580-581.)

In *Barney* v. *Aetna Casualty & Surety Co.* (1986) 185 Cal.App.3d 966, 980-981 [230 Cal.Rptr. 215], the court mentioned, in passing, that the insurer in *Reid* "had neither actual nor constructive notice of any claim against third parties and, therefore, no duty [to preserve evidence] regarding such a claim."

*Willard* v. *Caterpillar, Inc.* (1995) 40 Cal.App.4th 892, 909 [48 Cal.Rptr.2d 607] (disapproved on other grounds in *Cedars-Sinai, supra,* 18 Cal.4th at p. 18, fn. 4), reiterated *Reid's* holding that an insurer has "no duty to preserve as evidence" a damaged motor vehicle "absent a specific request . . . to do so."

The most recent case in this area on the issue of duty is *Dunham* v. *Condor Ins. Co.* (1997) 57 Cal.App.4th 24 [66 Cal.Rptr.2d 747] (*Dunham*). *Dunham*

involved an explicit claim of third party negligent spoliation of evidence on facts similar to those in *Reid*. The plaintiffs in *Dunham* claimed that an insurer, Condor, negligently failed to preserve a damaged truck trailer part (a trunnion shaft) that the plaintiffs needed for a product liability action against the trunnion shaft manufacturer. (*Id.* at pp. 26-28.)

*Dunham* noted that although *Reid* discussed other considerations, *Reid*'s holding, which was "directly on point," centered on a "specific request" to preserve, something absent in *Dunham*. (57 Cal.App.4th at pp. 27-28.) Said *Dunham*: "[Plaintiffs] allege only that they asked [Condor] for access to [Condor's insured, who was involved in the truck trailer accident, and who, at that point, had possession of the trunnion shaft]. [Plaintiffs] have not alleged, and are evidently incapable of alleging, that they asked [Condor] to preserve the trunnion shaft." (*Id.* at p. 28.)

*Dunham* stands for the proposition that to create a duty in a third party negligent spoliation case based on a "specific request," (57 Cal.App.4th at pp. 27-28.) the request must be just that—a request to the relevant entity specifically identifying the evidence that needs to be preserved.

■ This review of the California precedents shows that a duty in a third party negligent spoliation case can be created by the spoliator voluntarily undertaking to preserve the evidence and a plaintiff reasonably and detrimentally relying thereon (see *Williams*); by an agreement to preserve between the spoliator and the plaintiff (*Smith* v. *Superior Court,* supra, 151 Cal.App.3d 491, overruled on other grounds in *Cedars-Sinai, supra,* 18 Cal.4th at p. 18, fn. 4); or by a specific request to the spoliator to preserve a particular item (*Reid, Dunham*). To cover all the negligent spoliation duty bases, a duty may also be based on some other contractual foundation, or on a statute, a regulation (for example, record-retention statutes and regulations), or some analogous special relationship. (See Nolte, *The Spoliation Tort: An Approach to Underlying Principles* (1995) 26 St. Mary's L.J. 351, 365-375; see also Annot., Intentional Spoliation of Evidence, Interfering With Prospective Civil Action, As Actionable (1989) 70 A.L.R.4th 984, § 4, 993-995.)

■ We agree these are the duty bases for the third party negligent spoliator. As we shall explain, constructive notice of a need to preserve is not enough to create a duty to preserve in this context. Consequently, the fact that USAA knew (or should have known) there was a seat belt malfunction, coupled with the notice to USAA that the named insured had an attorney, that he (the insured) wanted to sue the seat belt manufacturer, and that he wanted his attorney or representative to look at the car, show only

constructive notice rather than a specific request to preserve the car; therefore, these facts do not create a duty to preserve the car. We also condition the "specific request" duty basis by requiring that such a request be accompanied by an offer to pay the cost or otherwise bear the burden of preserving.

█ ·"The existence of 'duty' is a question of law. . . . 'Legal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done.' . . . [¶] It is a fundamental proposition of tort law that one is liable for injuries caused by a failure to exercise reasonable care. [The California Supreme Court has] said, however, that in considering the existence of 'duty' in a given case several factors require consideration including 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' . . ." (*Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 750 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701], citations and brackets omitted; see also *Christensen* v. *Superior Court* (1991) 54 Cal.3d 868, 885-886 [2 Cal.Rptr.2d 79, 820 P.2d 181]; *Cedars-Sinai, supra,* 18 Cal.4th at p. 8; *J'Aire, supra,* 24 Cal.3d at pp. 803-804; *Velasco, supra,* 169 Cal.App.3d at pp. 877-878; *De Vera* v. *Long Beach Pub. Transportation Co.* (1986) 180 Cal.App.3d 782, 794-795 [225 Cal.Rptr. 789].)

At the outset, it is helpful to note a couple of "merely conclusory expressions" relevant to duty in the context of third party negligent spoliation. Conveniently, these expressions are embodied in the term itself, "third party negligent spoliation." At issue is only *negligent* spoliation. More importantly, this negligent spoliation is done by one who has *no connection* to the lawsuit or the prospective lawsuit in which the spoliated evidence has been deemed relevant (i.e., a "third party" spoliator). Thus, no broad concerns of deterring wrongful but potentially profitable litigation-related conduct or of preserving the integrity of the civil justice system are generally implicated in the third party negligent spoliation context. This limited risk calls for a limited duty. As stated decades ago but still true, "[t]he risk reasonably to be perceived defines the duty to be obeyed. . . ." (*Palsgraf* v. *Long Island R. Co.* (1928) 248 N.Y. 339 [162 N.E. 99, 100, 59 A.L.R. 1253].) These conclusory expressions support limiting the usual duty in third party negligent spoliation to an agreement, a voluntary undertaking with reasonable and detrimental reliance, or a specific request accompanied by an offer to bear the burden of preserving.

A limited duty is also borne out when we apply the more specific factors of the duty analysis. Absent an agreement to preserve, a voluntary undertaking with reasonable and detrimental reliance, a specific request, or some other contractual, legal or analogous special relationship, there is little or no "transaction intended to affect the plaintiff," or "foreseeability of harm to the plaintiff," or "closeness of connection between the defendant's conduct and the injury suffered," or "moral blame attached to the defendant's conduct," or "future harm to prevent." (See *J'Aire, supra,* 24 Cal.3d at pp. 804-805, 807-808; *Thing* v. *La Chusa* (1989) 48 Cal.3d 644, 663-664 [257 Cal.Rptr. 865, 771 P.2d 814]; *Ott* v. *Alfa-Laval Agri, Inc.* (1995) 31 Cal.App.4th 1439, 1454-1455 [37 Cal.Rptr.2d 790].)

A difficult issue in the spoliation context is the "uncertainty of the fact of harm," or what *J'Aire* referred to as "the degree of certainty that the plaintiff suffered injury." (See *Cedars-Sinai, supra,* 18 Cal.4th at pp. 14-15; *J'Aire, supra,* 24 Cal.3d at p. 804.) Limiting the usual duty in third party negligent spoliation to an agreement to preserve, or a voluntary undertaking with reasonable and detrimental reliance, or a specific request, ensures that such a spoliator has acted wrongfully in a specifically identified way. Negligent spoliation is analogous to negligent interference with prospective economic advantage. (*Velasco, supra,* 169 Cal.App.3d at pp. 877-878.) This specifically delineated wrongful conduct and analogous cause of action provide guidance, if not a model, for addressing the uncertainty of the fact and the amount of harm regarding third party negligent spoliation. (See also 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 664, p. 759, as quoted in com. to BAJI No. 7.82.1 (8th ed. 1994) p. 379.)

That brings us to the last relevant duty factor—" 'the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach.' " (*Thompson* v. *County of Alameda, supra,* 27 Cal.3d at p. 750; *De Vera* v. *Long Beach Pub. Transportation Co., supra,* 180 Cal.App.3d at p. 794.) It is common knowledge that thousands of accidents occur on California roadways each year, leaving behind totally and partially damaged cars and trucks. Every accident involving personal injury or property damage has the potential to be a lawsuit. These lawsuits could encompass myriad parties, claims, and cross-claims— known and unknown, foreseeable and unforeseeable. Against this vast expanse, what is the duty of the alleged third party spoliator who possesses or controls one of these totally or partially damaged vehicles? The only answer is a duty whose cornerstone is actual, specific knowledge. That duty is appropriately defined in terms of an agreement to preserve, a voluntary undertaking to preserve with reasonable and detrimental reliance, or a specific request to preserve accompanied by an offer to pay the cost or

otherwise bear the burden of preserving, or some other contractual, legal or analogous special relationship.

As noted, we have formally added a condition to the "specific request" duty basis. The specific request to preserve must be accompanied by an offer to pay the cost or otherwise bear the burden of preserving. We do not think a tort duty to preserve should be created simply by someone specifically requesting a third party to preserve something. Preservation may entail significant burdens. (See *Cedars-Sinai, supra,* 18 Cal.4th at p. 15.) Formally adding this condition to the "specific request" duty basis gives the alleged third party spoliator "some say" and control in the matter, similar to what the spoliator has in the "agreement" and the "undertaking" duty contexts. This condition also places the burden of preservation rightfully where it belongs—on the person or entity requesting preservation.

 Here, the trial court instructed the jury regarding duty: "For plaintiff to prevail on his claim of negligent spoliation of evidence, you must find . . . either that [USAA] agreed to preserve plaintiff's [car] or [that] plaintiff specifically requested [USAA] to preserve the car or that [USAA] undertook responsibility for [preserving] the car and plaintiff relied to his detriment on that undertaking." (Underlines in original.) In a corresponding special verdict, the jury answered "no" to each of these options. Thus, there is no problem here with the "unconditioned" specific request option.

There is no suggestion that some other contractual or legal basis exists to impose a duty to preserve on USAA. The only possible special relationship arises from plaintiff's status as an insured under the USAA policy. However, there is no indication the USAA insurance policy obligates USAA to preserve evidence (or to protect claims) for plaintiff's use in actions against third parties. (See *Reid, supra,* 173 Cal.App.3d at pp. 576-577.)

We conclude that USAA had no duty to preserve plaintiff's car.

The judgment is affirmed.[3]

Raye, J., and Morrison, J., concurred.

---

[3]It is unclear whether plaintiff's father has appealed from the summary judgment against him. In any event, plaintiff's father's lawsuit falls with plaintiff's.