[No. B137691. Second Dist., Div. Three. May 19, 2000.]

CHANTAL COPRICH et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LIBERTY MUTUAL INSURANCE COMPANY et al., Real Parties in
Interest.

COUNSEL

Gottesman & Polito and Frank D. Polito for Petitioners.

No appearance for Respondent.

Kern and Wooley, Susan T. Olson and Melodee A. Yee for Real Party in Interest Liberty Mutual Insurance Company.

Yoka & Smith, Walter M. Yoka and David T. McCann for Real Party in Interest Board Ford, Inc.

## OPINION

**CROSKEY, Acting P. J.**—Plaintiffs Chantal Coprich and Jeffrey J. Coprich, Jr., through Chantal Coprich as his guardian ad litem, challenge an order granting judgment on the pleadings in favor of defendants Liberty Mutual Insurance Company (Liberty Mutual) and Board Ford, Inc. (Board Ford), against a cause of action for negligent spoliation of evidence. The claim arises from the destruction of an automobile that was involved in a fatal accident. Plaintiffs contend *Johnson v. United Services Automobile Assn.* (1998) 67 Cal.App.4th 626 [79 Cal.Rptr.2d 234] and other appellate court opinions recognize a cause of action for negligent spoliation and are not inconsistent with recent opinions by the Supreme Court in *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1 [74 Cal.Rptr.2d 248, 954 P.2d 511] (*Cedars-Sinai*) and *Temple Community Hospital v. Superior Court* (1999) 20 Cal.4th 464 [84 Cal.Rptr.2d 852, 976 P.2d 223] (*Temple Community*). We conclude the policy considerations that caused the court in *Cedars-Sinai* and *Temple Community* to find that there is no tort remedy for intentional spoliation of evidence also compel the conclusion that there is no tort remedy for negligent spoliation. However, we direct the trial court to grant plaintiffs leave to amend the complaint to allege a cause of action for breach of a contractual duty to preserve evidence.

### FACTUAL AND PROCEDURAL BACKGROUND

Jeffrey J. Coprich, Sr., was driving on a freeway in a rental car from Board Ford with his wife Chantal Coprich and their children Jeffrey, Jr., and Essence as passengers in August 1996, when the front tire blew out, causing the vehicle to roll several times, injuring Chantal Coprich and Jeffrey, Jr., and killing Essence. Sometime later, Chantal Coprich asked Board Ford and its insurer, Liberty Mutual, to preserve the vehicle for use as evidence. Her attorney then sought to examine the car and tires in July 1997, but a claims agent for Liberty Mutual informed him that they no longer existed or had been sold.

Chantal Coprich and Jeffrey, Jr., sued Liberty Mutual, Board Ford, and Jeffrey J. Coprich, Sr., in July 1997. The amended complaint alleged causes of action for negligence, breach of warranty, and strict liability against Board Ford, negligence against Jeffrey J. Coprich, Sr., and intentional and negligent spoliation of evidence against Liberty Mutual and Board Ford. The court sustained without leave to amend Board Ford's demurrer to the intentional spoliation cause of action.

Liberty Mutual moved for judgment on the pleadings in July 1999 on the grounds that *Cedars-Sinai* and *Temple Community* compel the conclusion

that there is no tort remedy for either intentional or negligent spoliation. Board Ford joined in the motion as to the negligent spoliation cause of action. The court granted the motion as to intentional spoliation but denied it as to negligent spoliation based on appellate court opinions recognizing a cause of action for negligent spoliation.

Liberty Mutual and Board Ford both petitioned this court for a writ of mandate (cases Nos. B135126 & B135178), challenging the denial of the motion for judgment on the pleadings as to the negligent spoliation cause of action. We consolidated the two proceedings and issued an alternative writ directing the trial court either to vacate its order and enter a new order granting the motion or show cause why a peremptory writ should not issue. The trial court vacated the order and entered a new order granting the motion for judgment on the pleadings against the negligent spoliation cause of action as to both defendants without leave to amend. Plaintiffs now challenge the new order.

## CONTENTIONS

Plaintiffs contend the tort of negligent spoliation of evidence recognized in prior appellate court opinions is still valid notwithstanding the recent Supreme Court opinions in *Cedars-Sinai* and *Temple Community*. In addition, at oral argument they proposed an amendment to the complaint to state a cause of action for breach of a contractual duty to preserve evidence. Liberty Mutual and Board Ford contend the policy considerations that caused the Supreme Court to determine that there is no tort remedy for intentional spoliation also compel the conclusion that there is no tort remedy for negligent spoliation and no contract remedy for breach of a contractual duty to preserve evidence.

## DISCUSSION

### 1. *Introduction*

The Supreme Court in *Cedars-Sinai* and *Temple Community* weighed the potential benefits of allowing a tort remedy for intentional spoliation of evidence against the burdens and costs. It determined that the benefits would be limited while the burdens and costs would be substantial and onerous and concluded that a tort remedy for intentional spoliation should not be recognized in the circumstances presented in those cases. (*Cedars-Sinai, supra,* 18 Cal.4th at p. 17; *Temple Community, supra,* 20 Cal.4th at p. 478.)

The issue of the existence of a cause of action for negligent spoliation was not presented in *Cedars-Sinai* and *Temple Community,* and the court did not

consider it. (*Cedars-Sinai, supra,* 18 Cal.4th at p. 5; *Temple Community, supra,* 20 Cal.4th at p. 471, fn. 3.) The court in *Temple Community* acknowledged, however, that a contract remedy may be available for breach of a contractual duty to preserve evidence. (*Temple Community, supra,* 20 Cal.4th at p. 477.) We conclude that the policy considerations concerning intentional spoliation discussed by the court in *Cedars-Sinai* and *Temple Community* apply equally to negligent spoliation, but they do not preclude a cause of action for breach of a contractual duty to preserve evidence.

### 2. *Cedars-Sinai*

*Cedars-Sinai* involved a child who sustained injuries during birth allegedly caused by oxygen deprivation. During discovery in the child's malpractice action against the hospital and others, the hospital was unable to locate certain medical records. The plaintiff amended the complaint to add a cause of action for intentional spoliation against the hospital. After other proceedings not relevant to the issue on review, the Supreme Court granted review to decide whether a tort remedy existed for intentional spoliation of evidence by a party to the underlying litigation (first party spoliation). (*Cedars-Sinai, supra,* 18 Cal.4th at p. 5.)

The *Cedars-Sinai* court framed the issue as whether to impose a legal duty on parties to a lawsuit not to destroy intentionally evidence relevant to the lawsuit and stated that the existence of a duty depended on policy considerations. (*Cedars-Sinai, supra,* 18 Cal.4th at p. 8, citing *Dillon v. Legg* (1968) 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) It noted in particular the policy against creating derivative tort remedies for litigation-related misconduct, other remedies available to deter or alleviate the effects of first party spoliation, and the uncertainty of the fact of harm arising from spoliation in many cases. (*Cedars-Sinai, supra,* 18 Cal.4th at pp. 8-15.)

The court discussed the policy favoring the resolution of a dispute in a single lawsuit and the interest of "finality of adjudication" and cited with approval cases denying a tort remedy for other litigation-related misconduct such as perjury and falsification of evidence. (*Cedars-Sinai, supra,* 18 Cal.4th at pp. 9-11.) It stated that litigants should assume responsibility to expose misconduct during the underlying action and pursue nontort remedies in that action, such as an evidentiary inference that the missing evidence was adverse to the spoliating party (Evid. Code, § 413) and discovery sanctions (Code Civ. Proc., § 2023). (*Cedars-Sinai, supra,* 18 Cal.4th at pp. 11-13.) It noted that intentional spoliation appears to be uncommon (*id.* at p. 13) and stated, " 'Endless litigation, in which nothing was ever finally determined,

would be worse than occasional miscarriages of justice. [Citations.]' " (*Id.* at p. 11, quoting *Pico v. Cohn* (1891) 91 Cal. 129, 133-134 [27 P. 537].)

The court also emphasized the potential costs of meritless litigation and erroneous determinations of liability based on speculation as to what the destroyed evidence would have shown or how it would have affected the decision by the trier of fact in the underlying lawsuit, and of extraordinary measures to retain documents and other things solely because they may be relevant in some future litigation. (*Cedar-Sinai, supra,* 18 Cal.4th at pp. 13-15.) Finally, it noted the potential for jury confusion and inconsistent results if a spoliation cause of action were tried together with the underlying claims, and duplication of effort and potential for inconsistent results if it were tried in a separate lawsuit. (*Id.* at pp. 16-17.)

The *Cedars-Sinai* court strongly condemned the intentional destruction of evidence but concluded that the practice was uncommon, existing nontort remedies were adequate, the burdens and costs of allowing a tort remedy were substantial, and a tort remedy was unwarranted. (*Cedars-Sinai, supra,* 18 Cal.4th at pp. 8, 13, 17.) It held that when a party to a cause of action to which the evidence is relevant intentionally destroys or suppresses evidence and the victim knows or reasonably should know of the spoliation before the decision on the merits in the underlying action, there is no tort remedy for intentional spoliation. (*Id.* at pp. 17-18.)

Although the *Cedars-Sinai* court did not address the issue of whether a tort remedy existed for negligent spoliation of evidence, it expressly denied that it had recognized a spoliation tort remedy in *Williams v. State of California* (1983) 34 Cal.3d 18 [192 Cal.Rptr. 233, 664 P.2d 137] (*Cedars-Sinai, supra,* 18 Cal.4th at pp. 5-6, fn. 5), a case that had been cited in prior appellate court opinions for the proposition that the Supreme Court recognized a cause of action for negligent spoliation (see, e.g., *Smith v. Superior Court* (1984) 151 Cal.App.3d 491, 496-497 [198 Cal.Rptr. 829], disapproved in *Cedars-Sinai, supra,* 18 Cal.4th at p. 18, fn. 4; *Velasco v. Commercial Bldg. Maintenance Co.* (1985) 169 Cal.App.3d 874, 876-877 [215 Cal.Rptr. 504]).[1]

3. *Temple Community*

*Temple Community* involved a patient who sustained injuries when a surgical instrument allegedly malfunctioned and ignited a fire. Before filing

---

[1] *Williams v. State of California* held that highway patrol officers who assisted a motorist who was injured by debris from a passing truck had no duty to gather and preserve evidence for use in civil litigation. (34 Cal.3d at pp. 27-28.) The court noted that the plaintiff did not allege that the officers had represented that they would gather or preserve evidence or that they had prevented her from doing so, and granted her leave to amend the complaint. (*Ibid.*) However, the court did not hold that those matters, if alleged, would give rise to a cause of action.

suit, her attorney requested permission to inspect the instrument and other equipment used in the surgery and asked the hospital and physicians to preserve the evidence, but they allegedly refused the request and destroyed the evidence. The patient sued the instrument manufacturer for product liability and other causes of action, and sued the hospital and physicians for malpractice and intentional and negligent spoliation. (*Temple Community*, *supra*, 20 Cal.4th at pp. 466-467.)

The trial court granted summary judgment in favor of the manufacturer because there was no evidence that the instrument was defective and the manufacturer had provided adequate warnings regarding its use. (*Temple Community, supra,* 20 Cal.4th at pp. 466-467.) After other proceedings not relevant to the issue on review, the Supreme Court granted review to decide whether a tort remedy existed for the intentional spoliation of evidence relevant to a cause of action against another party (third party spoliation). (*Id.* at p. 469.)

The *Temple Community* court reiterated the policy considerations expressed in *Cedars-Sinai* and emphasized the policy against creating derivative tort remedies for litigation-related misconduct and favoring the resolution of a dispute in a single lawsuit. (*Temple Community, supra*, 20 Cal.4th at pp. 469-472.) The court disapproved of a disappointed litigant seeking from a third party the same compensation that it had sought unsuccessfully in the underlying action where the derivative litigation would require a retrial within a trial involving the same evidence presented in the underlying action, and decried the "endless spiral of lawsuits over litigation-related misconduct" that could result if a tort remedy were allowed. (*Id.* at pp. 472-473.) It noted the potential for premature and meritless claims if the spoliation claim were asserted in the underlying action before the completion of discovery, and the potential for jury confusion and inconsistent results. (*Id.* at p. 472.)

The court noted the probable uncertainty of both the fact of harm arising from spoliation and the element of causation in a substantial proportion of spoliation cases. " 'Without knowing the content and weight of the spoliated evidence, it would be impossible for the jury to meaningfully assess what role the missing evidence would have played in the determination of the underlying action. The jury could only speculate as to what the nature of the spoliated evidence was and what effect it might have had on the outcome of the underlying litigation.' (*Cedars-Sinai, supra*, 18 Cal.4th at pp. 13-14.)" (*Temple Community, supra*, 20 Cal.4th at p. 474.)

The *Temple Community* court acknowledged that fewer sanctions are available to deter spoliation by third parties or to mitigate its effects, but

it concluded that the burdens and costs on litigants, the judicial system, and others would outweigh the benefits of a tort remedy and that the limited remedies available are sufficient.[2] (*Temple Community, supra,* 20 Cal.4th at pp. 477-478.) It noted that it would be anomalous to impose liability against third parties for conduct that would not give rise to liability if committed by a party to the underlying action. (*Id.* at p. 477.)

### 4. *Negligent Spoliation of Evidence*

■ We now turn to the issue of whether to recognize a tort remedy for first party and third party negligent spoliation. As in *Cedars-Sinai* and *Temple Community,* the existence of a tort duty depends on policy considerations. (*Cedars-Sinai, supra,* 18 Cal.4th at p. 8; see *Temple Community, supra,* 20 Cal.4th at p. 471.)

To recognize a cause of action for negligent spoliation would lead to derivative litigation by parties to the underlying action against other parties and third parties, contrary to the policy against creating derivative tort remedies for litigation-related misconduct and favoring the resolution of a dispute in a single lawsuit.[3] (See *Cedars-Sinai, supra,* 18 Cal.4th at pp. 8-11; *Temple Community, supra,* 20 Cal.4th at pp. 471-472.) Litigants seeking to avoid the effect of a prior judgment could commence another action, threatening the finality of the original adjudication and potentially leading to endless litigation. (See *Cedars-Sinai, supra,* 18 Cal.4th at pp. 8-11; *Temple Community, supra,* 20 Cal.4th at pp. 472-473.)

The spoliation claim would require a retrial within a trial in which all the evidence presented in the underlying action would be presented again for the trier of fact to determine what effect the spoliated evidence might have had in light of the other evidence. (See *Cedars-Sinai, supra,* 18 Cal.4th at p. 16; *Temple Community, supra,* 20 Cal.4th at p. 475.) The trier of fact would have

---

[2]The limited remedies available in the third party spoliation context include monetary and contempt sanctions for misuse of the discovery process imposed against third parties to whom discovery is directed (see Code Civ. Proc., §§ 2020, subd. (h), 2023, subd. (b)(1), (5), 2025, subds. (j)(3), (o)), criminal sanctions for intentional destruction of evidence in certain circumstances (see Pen. Code, § 135), and disciplinary sanctions against attorneys involved in suppression of evidence (see Bus. & Prof. Code, §§ 6106, 6077; Rules Prof. Conduct, rule 5-220). In addition, the spoliation victim may mitigate the effect of missing evidence by demonstrating why it is missing (see Evid. Code, § 412) and may invoke sanctions against a litigating party that is sufficiently connected with the spoliator (see Code Civ. Proc., § 2025, subds. (j)(3), (o)). (*Temple Community, supra,* 20 Cal.4th at pp. 476-477; see also *Cedars-Sinai, supra,* 18 Cal.4th at p. 13.)

[3]The court in *Cedars-Sinai* and *Temple Community* anticipated the potential for derivative litigation, although the plaintiffs in both cases alleged spoliation claims in the underlying lawsuit, as here.

to speculate as to the nature of the missing evidence and the effect that it might have had in the underlying action, rendering the fact of harm and causation "irreducibly uncertain" and creating the potential for arbitrary and inconsistent results. (See *Cedars-Sinai, supra,* 18 Cal.4th at pp. 13-14, 16-17; *Temple Community, supra,* 20 Cal.4th at pp. 474-475.) If the spoliation claim were tried in the same lawsuit as the underlying cause of action, the potential for jury confusion and inconsistent results would be great. (See *Cedars-Sinai, supra,* 18 Cal.4th at p. 16; *Temple Community, supra,* 20 Cal.4th at p. 472.)

The risk of meritless claims for negligent spoliation is particularly troublesome in light of the uncertainty concerning the nature of the missing evidence and its potential effect in the underlying litigation, and the fact that documents and other evidence often are destroyed without fault in the ordinary course of events. (See *Cedars-Sinai, supra,* 18 Cal.4th at pp. 15-16; *Temple Community, supra,* 20 Cal.4th at p. 470.) Potential liability for negligent spoliation could cause individuals and entities to take extraordinary measures to retain documents and other things, at substantial costs. (See *Cedars-Sinai, supra,* 18 Cal.4th at p. 15; *Temple Community, supra,* 20 Cal.4th at p. 476.) Although the nontort remedies available to a victim of negligent spoliation appear to be very limited, even more so than the remedies available to a victim of third party intentional spoliation,[4] that circumstance alone does not override the other policy considerations that weigh against providing a tort remedy. (See *Temple Community, supra,* 20 Cal.4th at p. 477.)

Moreover, it would be anomalous to impose liability for negligence with respect to conduct that would not give rise to liability if committed intentionally. (Cf. *Temple Community, supra,* 20 Cal.4th at p. 477.)

These policy considerations compel the conclusion that the burdens and costs to litigants, the judicial system, and others if the courts were to allow a tort remedy for negligent spoliation of evidence would outweigh the

---

[4]Evidentiary inferences against the spoliating party based on willful suppression of evidence (Evid. Code, § 413) and criminal sanctions for intentional destruction of evidence (Pen. Code, § 135) would not be available for first party or third party negligent spoliation. Disciplinary sanctions against attorneys involved in suppression of evidence (Bus. & Prof. Code, §§ 6106, 6077; Rules Prof. Conduct, rule 5-220) also most likely would not be available for negligent spoliation. Sanctions for abuse of discovery are less likely where the misconduct was negligent as opposed to intentional, although they are not necessarily unavailable. (See Code Civ. Proc., § 2023, subd. (a)(4), (7); *Kohan v. Cohan* (1991) 229 Cal.App.3d 967, 970 [280 Cal.Rptr. 474] [a misuse of the discovery process need not be willful to be sanctionable].) Still, the spoliation victim may mitigate the effect of missing evidence by demonstrating why it is missing. (See Evid. Code, § 412.)

limited benefits. We therefore conclude there is no tort remedy for first party or third party negligent spoliation of evidence.[5]

## 5. Prior Appellate Court Opinions

Several appellate court opinions, most of which predate both *Cedars-Sinai* and *Temple Community*, recognize a limited cause of action for negligent spoliation against a third party. Those opinions do not adequately address the compelling policy considerations discussed in *Cedars-Sinai* and *Temple Community*, and we decline to follow them.

In *Velasco v. Commercial Bldg. Maintenance Co., supra*, 169 Cal.App.3d 874, the plaintiffs were injured by an exploding bottle, the bottle fragments were left in an unmarked paper bag on their attorney's desk, and a janitorial service discarded them while cleaning the office. (*Id.* at p. 876.) The court concluded, without holding, that a cause of action can be stated for negligent spoliation, but based on the facts alleged found that the janitorial service had no duty to preserve the evidence and affirmed the sustaining of a demurrer. (*Id.* at pp. 877-878.) It cited *Williams v. State of California, supra*, 34 Cal.3d at pages 27-28, as authority for the existence of a cause of action for negligent spoliation, contrary to the Supreme Court's later decision in *Cedars-Sinai*.[6] (*Velasco*, at pp. 876-877.) It also cited *Smith v. Superior Court, supra*, 151 Cal.App.3d 491, in which the court recognized a cause of action for intentional spoliation, and concluded that a cause of action for negligent spoliation can be stated "[f]or the reasons described in *Smith v. Superior Court, supra*, 151 Cal.App.3d 491."[7] (*Velasco*, at p. 877.) Neither *Velasco* nor the cases it cited fully addressed the policy considerations

---

[5]The Fourth District Court of Appeal recently reached the same conclusion in a third party negligent spoliation case in an opinion published after oral argument in this case. (See *Farmers Ins. Exchange v. Superior Court* (2000) 79 Cal.App.4th 1400 [95 Cal.Rptr.2d 51].

[6]See *Cedars-Sinai, supra*, 18 Cal.4th at pages 5-6, footnote 5, and see footnote 1, *ante*.

[7]*Smith v. Superior Court* held that a driver who was injured when a tire flew off another vehicle and crashed into her windshield stated a cause of action for intentional spoliation against the car dealer that allegedly had installed the tire, agreed with the plaintiffs' counsel to preserve it as evidence, and then destroyed or lost it. (*Smith v. Superior Court, supra*, 151 Cal.App.3d at pp. 494-495.) The court construed *Williams v. State of California, supra*, 34 Cal.3d 18, as recognizing a spoliation tort remedy (*Smith*, at pp. 496-497), contrary to the Supreme Court's later decision in *Cedars-Sinai*, and also relied on the proposition that "New and nameless torts are being recognized constantly" (*Smith*, at pp. 495-496, citing Prosser, Torts (4th ed. 1971) § 1, pp. 3-4) and the maxim "[f]or every wrong there is a remedy" (*Smith*, at p. 496, citing Civ. Code, § 3523). It considered the uncertainty of the amount of damages but not the uncertainty of the fact of harm, as noted in *Cedars-Sinai, supra*, 18 Cal.4th at page 14, footnote 3, and did not address several of the policy considerations identified in *Cedars-Sinai* and *Temple Community*. *Cedars-Sinai* expressly disapproved *Smith v. Superior Court* to the extent that it is inconsistent with the Supreme Court's opinion in that case. (*Cedars-Sinai, supra*, 18 Cal.4th at p. 18, fn. 4.)

discussed in *Cedars-Sinai* and *Temple Community. Reid v. State Farm Mut. Auto. Ins. Co.* (1985) 173 Cal.App.3d 557, 579-580 [218 Cal.Rptr. 913], and *Dunham v. Condor Ins. Co.* (1997) 57 Cal.App.4th 24, 27-28 [66 Cal.Rptr.2d 747], also suggested that a cause of action for third party negligent spoliation exists, while holding that there was no duty to preserve evidence based on the particular facts presented. Since *Velasco*, *Reid*, and *Dunham* did not hold that a cause of action exists and do not reflect the policy considerations cited in *Cedars-Sinai* and *Temple Community*, they are not controlling.[8]

*Johnson v. United Services Automobile Assn.*, *supra*, 67 Cal.App.4th 626, was decided after *Cedars-Sinai* but before *Temple Community*. In *Johnson*, the plaintiff alleged that a faulty seat belt caused him to be ejected from his car in a collision. His insurer retained the damaged car for several weeks and allowed his attorney to have part of the seat belt removed for use in litigation against the manufacturer, but then salvaged the car. (*Johnson*, at pp. 629-630.) The court concluded that a tort remedy exists for third party negligent spoliation but based on the facts presented found no duty to preserve the evidence and affirmed a summary judgment for the defendant. (*Id.* at pp. 632, 638.) The court cited the policy considerations identified in *Cedars-Sinai* in the first party spoliation context and concluded without significant discussion that the policy against creating derivative tort remedies for litigation-related misconduct and the availability of nontort remedies for the misconduct "basically are not implicated in the third party spoliation context," and that the uncertainty of the fact of harm and other burdens and costs do not justify precluding a cause of action for third party negligent spoliation. (*Johnson*, at pp. 631-632.) However, those conclusions are contrary to the Supreme Court's later decision in *Temple Community*, which emphasized the need for "finality of adjudication" in the third party context, the uncertainty of the fact of harm and causation, the potential for arbitrary and inconsistent results, and other costs and burdens, as we have discussed above.

6.  *Breach of a Contractual Duty to Preserve Evidence*

▉ Our conclusion that there is no tort remedy for negligent spoliation does not preclude the existence of a duty based on contract. (See *Temple*

---

[8]Also inapposite are cases where the court assumed without deciding that a cause of action for negligent spoliation exists (see, e.g., *Hernandez v. Garcetti* (1998) 68 Cal.App.4th 675, 680 [80 Cal.Rptr.2d 443] [held that a government tort claim for negligent spoliation was untimely]), cases where the issue of the existence of a tort remedy was not squarely at issue (see, e.g., *Coca-Cola Bottling Co. v. Superior Court* (1991) 233 Cal.App.3d 1273, 1289, 1293-1294, fn. 10 [286 Cal.Rptr. 855] [held that the workers' compensation exclusivity rule did not preclude a cause of action for negligent spoliation]), and cases premised on the breach of a fiduciary duty (see, e.g., *Galanek v. Wismar* (1999) 68 Cal.App.4th 1417, 1425 [81 Cal.Rptr.2d 236] [attorney malpractice]) or other duty arising from a special relationship (see, e.g., *De Vera v. Long Beach Pub. Transportation. Co.* (1986) 180 Cal.App.3d 782, 794-795 [225 Cal.Rptr. 789] [common carrier]).

*Community, supra,* 20 Cal.4th at p. 477.) While the existence of a tort duty in certain circumstances depends on policy considerations (*Cedars-Sinai, supra,* 18 Cal.4th at p. 8, citing *Dillon v. Legg, supra,* 68 Cal.2d at p. 734), those policy considerations do not negate the existence of a contractual obligation created by mutual agreement or promissory estoppel. A contractual remedy may give rise to some of the same burdens and costs as would a spoliation tort remedy, but we cannot negate a contractual obligation based on policy considerations other than specific grounds such as illegality (Civ. Code, §§ 1598, 1599, 1608, 1667) and unconscionability (Civ. Code, § 1670.5).

Liberty Mutual and Board Ford have not established that a contract to preserve evidence would be illegal, unconscionable, or otherwise unenforceable. The potential uncertainty of the fact of harm and other difficulties as to proof are matters of proof, not pleading; they cannot be decided at the pleading stage and do not preclude the existence of a cause of action based on a contractual duty. It may be exceedingly difficult for plaintiffs to establish damages resulting from the alleged breach of contract in the absence of agreed liquidated damages, but we will not prejudge the result at the pleading stage. Plaintiffs bear the burden to establish damages resulting from the alleged breach. (See Civ. Code, § 3300.)

## DISPOSITION

The order to show cause is discharged. Let a peremptory writ of mandate issue directing the trial court to vacate its order granting the motion for judgment on the pleadings without leave to amend and enter a new order granting the motion with leave to amend. Plaintiffs shall recover their costs in this writ proceeding.

Kitching, J., and Aldrich, J., concurred.

The petitions of both petitioners and real parties in interest for review by the Supreme Court were denied July 26, 2000. Werdegar, J. was of the opinion that the petitions should be granted.